UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
REGINA MCCAFFERY,

                Plaintiff,                              **MEMORANDUM AND ORDER**
                                                                            11 CV 0703 (DRH) (WDW)

           - against -

MARC MCCAFFERY,

                Defendant.
-------------------------------------------------------------------X
**APPEARANCES:**

**Greenberg Traurig PA**
Attorneys for Plaintiff
625 E. Twiggs Street, Suit 100
Tampa, FL 33602
BY:   Christopher Torres, Esq.
       David Barnett Weinstein, Esq.
       John A. Wirthlin, Esq.

**Chalos & Co., P.C.**
Attorneys for Plaintiff
55 Hamilton Avenue
Oyster Bay, NY 11771
BY:   George M. Chalos, Esq.

**Eaton & Van Winkle LLP**
Attorneys for Defendant
3 Park Avenue, 16th Floor
New York, NY 10016
BY:   Robert N. Swetnick, Esq.


**HURLEY, Senior District Judge:**

      Regina McCaffery ("plaintiff") and Marc McCaffery ("defendant") are adult siblings who

purchased a condominium at 27-1 Mitchell Road, Westhampton Beach, New York ("the

property") in which their mother Barbara McCaffery ("Barbara") currently resides. Plaintiff

commenced this diversity action against defendant seeking partition, sale, and purchase of the property. In the alternative, plaintiff asserts a cause of action for unjust enrichment and seeks dissolution of an at-will partnership formed between her and defendant pursuant to N.Y. Gen. Partnership Law §§ 10-11.

Presently before the Court is plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 asking the Court to "(1) partition the property and sever the co-tenancy of the Parties, (2) declare the Parties' rights and obligations with respect to the property, (3) grant sole title of the property to Plaintiff upon her purchase of Defendant's interest, and (4) order Defendant to reimburse Plaintiff for her disproportionate contributions as a co-tenant." (Pl.'s Mem. in Supp. at 2.) In the alternative, plaintiff argues that she "is entitled to summary judgment for unjust enrichment because there is no genuine issue of material fact that Defendant has been enriched as a result of Plaintiff's consistent and disproportionate monetary and non-monetary contributions to the Property," (*id*. at 11), and seeks summary judgment to dissolve the alleged at–will partnership between the parties and to reimburse plaintiff for her capital contributions. (*Id*. at 12-13.) For the reasons set forth below, plaintiff's motion is denied.

## *BACKGROUND*

The following material facts are drawn from the parties' Local Civil Rule 56.1 Statements and evidentiary submissions and are undisputed unless otherwise noted.

Plaintiff Regina McCaffery resides in Florida, although she also maintains a residence at the property. Defendant Marc McCaffery resides in Michigan. Plaintiff and Defendant purchased the property so that their mother Barbara McCaffery could live there and also to incur the long-term benefits of the property's appreciation. It is undisputed that prior to the parties'

purchase of the property, Barbara lived at the property and paid rent, to which plaintiff sometimes contributed.

It is undisputed that the parties purchased the property as tenants in common for $220,000. To fund the purchase, the parties executed a promissory note dated July 2, 1998 in favor of Long Island Savings Bank, FSB in the original principal amount of $198,000 and delivered a mortgage securing the payment of that note ("the First Mortgage"). The parties also executed a second promissory note dated June 22, 1998 in favor of Rocco Oliverio ("Oliverio") in the original principal amount of $28,000 also to fund the purchase of the property, and they delivered a second mortgage to Oliverio. On March 24, 2003, the parties refinanced the property with the execution of a third promissory note in favor of Ohio Savings Bank in the original principal amount of $225,000 and delivered a third mortgage to Ohio Savings Bank. Although plaintiff claims that the purpose of this loan was to make improvements to the property, defendant claims that plaintiff retained excess funds without his knowledge or consent. It is undisputed, however, that this refinancing fully satisfied the First Mortgage.

Moreover, it is undisputed that the parties are fee simple owners of the property as tenants in common and neither party has transferred any of his or her ownership interest in the property. In addition, the parties' agree that their ownership interests in the property are subject only to the interest of the Ohio Savings Bank, as a holder of the third mortgage, the outstanding balance of which at the time this motion was filed was $188,433.42.[1]

*The Parties' Monetary Obligations and Contributions*

---

[1] The parties do not specifically state that they have paid off the Oliverio mortgage, however, it is implied from this statement that they have done so.

Although it is undisputed that there was no written agreement between the parties concerning the management, maintenance, and ownership of the property, defendant contends that there was an oral agreement between the parties as to each party's obligations. According to defendant, as a condition of defendant contributing funds for the purchase of the property, defendant would not contribute any funds toward the mortgage payments, homeowners association dues, or other expenses of the ownership, maintenance or operation of the property. In addition, according to defendant, the parties verbally agreed that Barbara would pay the mortgage and homeowners' association dues, which were similar in amount to her former rent payments, and plaintiff would contribute the balance needed to cover any shortfall. Plaintiff disputes the existence of any agreement.

It is undisputed that defendant contributed $10,275 towards the down payment and appraisal. In addition, plaintiff claims that she contributed $19,616 towards the down payment and closing costs, although defendant asserts that these funds were derived from the Oliverio loan. In addition, Plaintiff claims that both she and defendant each paid $10,053.50 towards the refinancing of the Property.[2] According to plaintiff, defendant has contributed a total of $20,328.50 towards the property (the total of his contributions to the down payment and the refinancing), though defendant claims that he contributed over that amount and that his credit rating suffered as a result of plaintiff's failure to pay the mortgage in a timely fashion (as she had agreed to do) including nine out of twelve months in just one year.

---

[2] Defendant disputes this only to the extent the amount is not equal to one-half of the sum by which the third mortgage exceeded the first mortgage.

Plaintiff claims that in addition to her contributions to the down payment and refinancing, she paid $286,264.32 towards the mortgage[3] on the property since it was purchased. In addition, plaintiff claims that since the property was purchased she has paid $11,953.00 towards the insurance on the property, $57,348.70 towards the dues and assessments, and $32,092.49 towards repairs and maintenance. In total, plaintiff claims that she has paid $389,327.51 towards the property since it was purchased and continues to pay the mortgage, property taxes, dues and assessments, and any repairs or maintenance of the property. An accounting of plaintiff's expenses, including mortgage payments, insurance payments, and repairs, is set forth in Exhibit J to plaintiff's declaration.

Defendant contests plaintiff's expenditure of these funds. He claims that all of the plaintiff's alleged payments, although they were paid out of plaintiff's account, were actually derived from Barbara's income that was deposited into plaintiff's account. According to defendant, Barbara, who did not have her own checking account, deposited all of her income[4] into plaintiff's account and used plaintiff's pre-signed checks to pay the property's expenses including the mortgage payments. In addition, defendant contends that the mortgage payments Barbara submitted were actually a form of rent because the source of those payments was Barbara's income. It is undisputed that in the past, plaintiff has declared on her tax returns rental income in the amount of the mortgage payments.

---

[3] It is undisputed that the monthly mortgage payments include the property taxes.

[4] Defendant contends that Barbara's income over a twenty year span totaled in excess of $650,000.00, but plaintiff asserts that after taxes and deductions for the years 2002 through 2011, Barbara's average annual income was approximately $24,603.20.

In 2004, Barbara was working with the IRS to secure an offer and compromise for her outstanding tax obligations. On September 30, 2004 the parties entered into a two-year lease agreement with Barbara. The purpose of this lease is disputed. Plaintiff claims that its purpose was to show the IRS that Barbara had a stable residence, while defendant claims that it was to confirm her expenses for the IRS and her creditors in order for them to consider her net available income. In addition, defendant claims that Barbara has been subject to either a written or verbal lease agreement as a month-to-month tenant for the entire thirteen years since the property's purchase.

*Barbara's Request for Assistance*

On or about November 10, 2005, Barbara asked the parties for help paying off some of her outstanding debts.[5] According to plaintiff, she was willing to help Barbara by refinancing the property and using the proceeds to pay the debts, but defendant would only agree to refinance the property under the following conditions:

a) the property had to be listed and sold at a time certain

b) defendant's wife had to be added to the title of the property

c) in the event of defendant's death, his wife would receive a 51% share of the property

d) plaintiff had to create and execute a will to ensure that the property would go to defendant and his family

e) Barbara had to sign a short-term lease to offset the repayment of the home equity line of credit.

---

[5] Defendant claims that these debts were specifically her income tax obligations for the years 1991, 2000, and 2004.

Defendant does not specifically dispute these conditions, but asserts that he presented numerous proposals all rejected by plaintiff. Additionally, defendant does not dispute that Barbara continued to ask for defendant's assistance on May 28, 2006 and October 4, 2006, but defendant contends that plaintiff continually rejected his proposals to help.

According to plaintiff, on or around January 2007, plaintiff agreed personally to satisfy Barbara's debt obligations. On August 1, 2010, plaintiff told defendant that she was individually approved to refinance the property with a cash-out of at least $100,000, which she would use to repay herself the funds that she expended to pay off Barbara's debts. Defendant claims that plaintiff wanted the refinancing in part to pay off her personal credit card bills, and he would not agree to plaintiff's refinancing proposal. On October 25, 2010, plaintiff requested that defendant provide a reasonable buy-out so that the parties could resolve the matter and that plaintiff could obtain sole title to the property. The parties, however, could not agree on a buy-out amount.

*Defendant's Presence at the Property*

It is undisputed that defendant has spent, at most, a total of seventeen days visiting or inspecting the property since it was purchased in 1997, although defendant asserts that he was precluded from spending any additional time at the property because Barbara and the plaintiff refused not to smoke on the property, thereby causing defendant's child to experience health issues requiring his hospitalization on one occasion and precluding further visits. Defendant also contends that plaintiff's attorney twice denied his request for a key to the house located on the property, and these denials appear to have taken place during the parties' negotiations prior to the filing of this lawsuit.

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot rely on the allegations in his or her pleadings, on conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citations omitted). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The district court, in considering a summary judgment motion, must also be mindful of the underlying burdens of proof because "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, "the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the" non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to present sufficient evidence in support of his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587).

### III. *Plaintiff's Claims*

#### A. *Partition and Sale*

Plaintiff seeks a partition of the property severing the parties' co-tenancy and asks the Court to "declare the Parties' rights and obligations with respect to the property," to "grant sole title of the property to Plaintiff upon her purchase of Defendant's interest," and to "order

9

Defendant to reimburse Plaintiff for her disproportionate contributions as a co-tenant." (Pl.'s Mem. in Supp. at 2.) Neither party disputes that the partition sought in this case is governed by Real Property Actions and Proceedings Law ("RPAPL") Article 9. According to RPAPL § 901(1) the right of partition is available to a tenant in common in possession of real property. *See also Rosen v. Rosen*, 78 A.D.2d 911 (3d Dep't 1980) ("It is well settled that partition among tenants in common of real property is a matter of right where the tenants no longer desire to hold the property in common.") Here there is no question that plaintiff is a tenant in common in possession of the property and that the right of partition is available to her.

"The object of partition proceedings is to enable those who own property as joint tenants or coparceners or tenants in common to put an end to the tenancy, so as to vest in each a sole estate in specific property or an allotment of the lands or tenements. Unless such a division can be accomplished, then the joint estate should be sold and the proceeds divided." *Cahill v. Cahill*, 226 N.Y.S. 199, 205 (Sup. Ct. 1927). Furthermore, according to RPAPL § 915, an "interlocutory judgment shall determine the right, share or interest of each party in the property," and "[w]here the property or any part thereof is so circumstanced that a partition thereof cannot be made without great prejudice to the owners, the interlocutory judgment . . . shall direct that the property or the part so circumstanced be sold at public auction." Here, both parties' submissions contemplate that a division of the property is not possible, and so the property must be sold and the proceeds divided. In addition, both parties concur that ordinarily tenants in common share the proceeds of a sale of the property in direct proportion to their ownership interest, and that here each party as a tenant in common has a one half interest. (Def.'s Mem. in Opp'n at 14; Pl.'s Mem. in Supp at 1,

7.) Plaintiff, however, argues that she is entitled to more than one half of the sale proceeds as reimbursement for her contributions "in excess of her obligations." (Pl.'s Mem. in Supp. at 8.) Specifically, plaintiff claims that she contributed $389,327.51 to the property, "all of which was necessary to protect and preserve" the property, and defendant contributed only $20,328.50." Moreover, plaintiff argues that "[b]ecause the Parties each have a one-half undivided interest in the Property, they were each obligated to contribute $204,828.01 towards the Property" and "[c]onsequently, Plaintiff is entitled to $184,499.51 in reimbursement for her contributions in excess of her legal interest." (Pl.'s Mem. in Supp. at 9.)

"While the Defendant agrees that upon a proper partition determination, and the necessary determination that partition be by sale, a sale of the Property could be made by public auction, [he contends] there must also first be [*inter alia*] the determination of the parties' rights and interests, including, if necessary, a trial of claimed adjustments to the distribution of proceeds . . . ." (Def.'s Mem. in Opp'n at 13.) According to defendant, "any determination of the income and expenses of a property and any resulting adjustment to the ordinary division of sales proceeds according to the proportion of ownership interest must be made prior to entering the interlocutory judgment." (Def's Mem. in Opp'n at 19.) Defendant cites case law supporting this position. *See Worthing v. Cossar*, 93 A.D.2d 515 (4th Dep't 1983) (adjusting trial court's division of proceeds from sale set forth in trial court's post-trial interlocutory judgment); *see also McVicker v. Sarma*, 163 A.D.2d 721, 722 (3d Dep't 1990) ("[a]n accounting of the income and expenses of the partitioned property is a necessary incident and should be had as a matter of right before entry of the interlocutory or final judgment and before any division of money between the parties"). Plaintiff does not contest

the need to "determine a co-tenant's distribution upon a partition sale" through an accounting of "income, expenses, and relative contributions of the co-tenants," however, she contends that she is entitled to summary judgment as there is no question of fact that she should be reimbursed for those expenses set forth in the accounting she provides as Exhibit J. (Pl.'s Mem. in Supp. at 8.)

The Court concludes that summary judgment is not appropriate and that it cannot enter an interlocutory judgment at this stage because there are genuine issues of material fact as to the proper division of the proceeds from a partition sale and a trial is necessary to determine whether plaintiff is entitled to reimbursement. In particular, defendant has raised genuine issues of fact as to whether plaintiff is entitled to reimbursement given the alleged agreement between the parties that plaintiff would pay Barbara's expenses. In addition, the Court cannot enter an interlocutory judgment at this stage because plaintiff has not persuaded the Court that she should be reimbursed for payments derived from Barbara's income deposited in plaintiff's account. The Court examines these issues in turn.

1. The Agreement

Defendant argues that "[i]n this case, there is an agreement on expenses so there is no right to disbursement or need to make any adjustment to the proportional division of proceeds of a sale." (Def.'s Mem. in Opp'n at 14.) According to defendant, he and plaintiff verbally agreed that his "cash contribution would be limited to the down payment of $10,275 required to secure the contract and his credit contribution in taking out the mortgage with Plaintiff," and "Barbara was to pay the monthly mortgage payments and homeowner's association dues as well as expenses that she had been paying as a renter, such as utilities, insurance, routine repairs and maintenance, and

any shortfall would be paid by [plaintiff]," who also "was to pay any sums needed for the closing over and above [defendant's] payment." (Def.'s Mem. in Opp'n at 4.) In support of this assertion, defendant cites his own declaration setting forth the terms of the agreement as well as various portions of the plaintiff's deposition discussing the plaintiff's understanding of the parties' responsibilities regarding the property. In particular, defendant cites a portion of plaintiff's deposition where she discusses talking to defendant on the telephone and affirming her understanding that she would be responsible for the mortgage and other expenses. (Pl.'s Dep. at 57-58.) Defendant also cites two portions of plaintiff's deposition where plaintiff referred to the parties as having a "deal" that defendant would contribute solely to the down payment and that plaintiff was responsible for the other expenses. (*Id.* at 146, 171-72.) Moreover, plaintiff in her deposition conceded that her assuming full responsibility for the mortgage and other expenses was "conditioned to [defendant's] agreeing to going on with the mortgage and closing." (*Id*. at 163-64.)

Plaintiff, however, argues that there is no evidence of a binding oral agreement between the parties. (Pl.'s Reply at 3.) Moreover, she claims that there was no mutual assent between the parties as to any terms of the purported agreement and defendant "fails to articulate the definite terms of the purported oral agreement with the particularity required to support a binding oral contract." (*Id*. at 3-4.) As support for this position, plaintiff cites *Charles Hyman, Inc. v. Olsen Indus. Inc.*, for the proposition that "[b]efore a court will impose contractual obligation [based on a purported verbal agreement], it must ascertain that a contract was made and that its terms are definite." 27 A.D.2d 270, 275 (1st Dep't 1996). Here, however, defendant has presented

evidence supporting his claim that there was a binding oral agreement[6] whose terms were definite in that his own contribution would be limited to the down payment and plaintiff and/or Barbara would be responsible for the rest of the expenses. As a result, there is a genuine question of fact as to whether plaintiff agreed to carry these expenses and whether she is entitled to reimbursement.

    2.    Source of funds

Even if the Court could conclude at this stage that there was no oral agreement precluding plaintiff from reimbursement, plaintiff has not persuaded the Court that as a matter of law she is entitled to reimbursement of funds deposited by Barbara into her account. Defendant argues that the Court should not "ignore the evidence that Barbara and not Plaintiff paid the expenses for which Plaintiff seeks to be credited in a distribution of sale proceeds." (Def.'s Mem. in Opp'n at 21.) In response, "Plaintiff does not dispute Defendant's contention that Mrs. McCaffery deposited funds into Plaintiff's individually-held bank account," but asserts that that fact "has no bearing on Plaintiff's claim for reimbursement because the funds withdrawn from Plaintiff's individually-held bank account were Plaintiff's property for which she is entitled to reimbursement" and claims that "the source of the funds from which a co-tenant pays towards a property is irrelevant." (Pl.'s Reply at 5-6.) In support of these assertions, plaintiff cites *Degliuomini v. Degliuomini*, 45 A.D.3d 626, 628-69 (2d Dep't 2007) and *Masek v. Wichelman*, 67 A.D.3d 444, 446 (1st Dep't 2009), although the Court does not agree with plaintiff's reading of these cases. In *Degliuomini*, the court ruled that one of the parties to a partition action should be

---

[6] Plaintiff does not contest defendant's assertion that the statute of frauds does not apply to the purported agreement between plaintiff and defendant, nor does she contest defendant's argument that even if the statute of frauds did apply, it would be satisfied. (Def.'s Mem. in Opp'n at 16-18.)

14

reimbursed for payments toward real estate taxes and the mortgage on the property that her wholly-owned corporation made on her behalf. Similarly, in *Masek*, the court held that a party to a partition action could be reimbursed for expenses paid via checks drawn on the account of the party's wholly owned corporation because the "payments were not made by a nonparty entity, but were in fact, made by the plaintiff as permissible distributions of his corporation." 67 A.D.3d at 446. While the Court recognizes through these cases that co-tenants may be entitled to reimbursement for payments drawn on the account of the co-tenant's wholly owned corporation, the Court will not go so far as to extrapolate from these cases that the source of the funds is completely irrelevant, especially whereas here the payments were not made by plaintiff's wholly – owned corporation such that they "were in fact" made by the plaintiff, but rather there is evidence that the payments were made by Barbara McCaffery. Moreover, plaintiff has not met her burden in demonstrating that the Court should rule as a matter of law that plaintiff is entitled to reimbursement for payments Barbara made via pre-signed checks drawn on an account containing Barbara's own income.[7]

---

[7] According to RPAPL § 903(1), any individual with a tenancy interest in the property is a necessary party. As discussed above, there is evidence that Barbara lived on the property and paid the property's expenses via checks drawn on the plaintiff's account. Whether these payments were in fact rent creating a tenancy interest held by Barbara cannot be resolved on the arguments before the Court at this time.

The Court, however, rejects defendant's contention that the mortgagee and the condominium association are necessary parties because they have liens and interests in the property. Pursuant to RPAPL § 904(2), a person having a lien or interest in the property is a permissive defendant. Regarding the mortgagee, as plaintiff notes, the mortgagee is a permissive rather than necessary party because "failure to have made the mortgagee a party does not make the proceedings null and void, but might make the title unmarketable and result in the purchaser having the right to be relieved of his purchase." (Pl.'s Reply at 9 n.39 (citing *Roberts v. Walker*, 28 A.D.2d 1146, 1147 (3d Dep't 1967)).) Furthermore, defendant has not put forth any evidence

As described above, material issues of fact as to whether there was an oral agreement[8] prevent the Court from entering an interlocutory judgment at this stage[9] as well as a declaration setting forth the rights and obligations of the parties with respect to the property. Moreover, plaintiff has not demonstrated that she is entitled to reimbursement for payments derived from Barbara's income deposited into her account. Furthermore, because the Court cannot conclude at this stage that plaintiff is entitled to reimbursement, plaintiff's request for summary judgment on her claim of unjust enrichment as well as her request for "reimbursement for her disproportionate capital contributions" based on her theory that the parties formed an at-will general partnership[10]

---

demonstrating that the condominium association has a lien or interest in the property.

[8] Given the issues of fact already presented, the Court will not reach defendant's argument that "[e]ven if Plaintiff could prove any such expenditures and even if the Court could enter judgment on this issue now, she still would be owed nothing by Defendant" because defendant has been effectively ousted from the property due to plaintiff's and Barbara's smoking habits as well as plaintiff's attorney's refusal to provide him with a key. (Def.'s Mem. in Opp'n at 20.) In addition, to the extent the plaintiff may be entitled to reimbursement at trial, the trier of fact will determine whether plaintiff is entitled to reimbursement for "repairs and improvements 'made in good faith' and necessary to protect the property." (Pl.'s Mem. in Supp. at 8-9 (citing *Wawrzusin v. Wawrzusin*, 212 A.D.2d 779, 780 (2d Dep't 1995)).)

[9] Additionally, at this time, the plaintiff has provided no authority supporting her proposition that the Court order plaintiff's purchase of defendant's interest in the property. The cases plaintiff cites support only that plaintiff *may* purchase the property at a public auction. *See Cahill v. Cahill*, 131 Misc. 99, 102 (Sup. Ct. 1927) ("The interlocutory judgment provided that any party to the action might become a purchaser of the premises upon said sale."); *Hausman v. Hausman*, 74 A.D.2d 597, 597 (2d Dep't 1980) (involving tenant in common who is purchaser at partition sale); *see also* RPAPL § 915 (providing that the sale of property be at public auction).

[10] Plaintiff's theory of an at-will partnership is itself questionable as New York's General Partnership Law § 11(2), cited by the plaintiff, explicitly states that "tenancy in common . . . does not of itself establish a partnership, whether such co-owners do or do not share any profits made by use of the property."

also fail. (Pl.'s Mem. in Supp. at 11-13.) Accordingly, plaintiff's motion for summary judgment is denied.[11]

## *CONCLUSION*

For the reasons set forth above, plaintiff's motion for summary judgment is denied. This matter is referred back to Magistrate Judge Wall for all remaining pre-trial supervision.

**SO ORDERED.**

Dated: Central Islip, New York
March 21, 2014

/s/
Denis R. Hurley
United States District Judge

---

[11] Because the plaintiff has failed to prove her claim on summary judgment, the Court declines to address at this stage the validity of defendant's affirmative defenses.